[Civ. No. 17245. Second Dist., Div. Two. Dec. 12, 1949.]

HOLLYWOOD TERMITE CONTROL COMPANY, INC.
(a Corporation) et al., Appellants, v. STRUCTURAL
PEST CONTROL BOARD et al., Respondents.

Glen Behymer for Appellants.

Fred N. Howser, Attorney General, and Alberta Gattone, Deputy Attorney General, for Respondents.

McCOMB, J.—From a judgment of dismissal predicated upon the sustaining of a demurrer without leave to amend to petitioners' petition for a writ of mandate to review a decision and order of the Structural Pest Control Board, respondents herein, petitioner appeals.

FACTS: Petitioners were holders of Group D licenses under section 8560 of the Structural Pest Control Act, division 3, chapter 14, Business and Professions Code.* Under the terms

---

*So far as material here section 8560 of the Business and Professions Code reads: "Limitation of licenses: Examinations: Rules and regulations: Application for examination and license in other grades: Subject of examination: Passing grade.

(a) [Limitation of licenses.] Licenses issued to operators or field representatives shall be limited to the group or groups of pest control for which the applicant has qualified by application and examination. The practice of pest control is classified into the following groups namely,

"Group A: which shall consist of practice relating to the control of termites and other wood-destroying insects and fungi, and rodent and insect control, and structural fumigation.

"Group B: which shall consist of practice relating to the control of termites and other wood-destroying insects and fungi, and rodent and insect control.

"Group C: which shall consist of practice relating to rodent and insect control with the use of insecticides, fumigants and allied chemicals, excluding however, the control of termites, other wood-destroying insects and fungi.

"Group D: which shall consist of practice relating to the control of termites, other wood-destroying insects and fungi.

"Group E: which shall consist of practice relating to the control of rodents and insects with the use of insecticides and allied chemicals, excluding however, termites and other wood-destroying insects and fungi, and fumigation with poisonous gases.

"Group F: which will consist of practice relating to the control of moths and carpet beetles with the use of insecticides and allied chemicals, excluding however, the use of poisonous gases.

"Group G: which will consist of practice relating to ant control.

"Group H: which shall consist of practice relating to the control of rodents and cockroaches.

"Group I: which shall consist of practice relating to the control of rats and mice. . . ."

of the Structural Pest Control Act they were without authority to use fumigants in the control of termites and other wood-destroying insects and fungi. These petitioners solicited fumigation work as a means of exterminating termites and entered into contracts with various property owners whereby they agreed to do fumigation work for the extermination of termites. They thereafter subcontracted the work to a licensed fumigator authorized to use fumigants in the extermination of termites, who was a "Group A" licensee under section 8560 of the Structural Pest Control Act.

After notice and a hearing before an administrative officer of respondent board petitioners were disciplined for violating the Structural Pest Control Act by suspension of their license for 30 days on the ground that petitioners had violated section 8651 of the act.

 QUESTION: *Does a holder of a "Group D" license under the Structural Pest Control Act who enters into a contract for the extermination of termites by the use of a fumigant, and who subcontracts such work to the holder of a "Group A" license, violate the provisions of section 8651 of the Structural Pest Control Act?*

This question must be answered in the affirmative. Section 8560 of the Structural Pest Control Act classifies pest control licensees, and the nine groups contain groups A to I inclusive. Only two of these groups, "A" and "C," are authorized to use fumigants, and only one of the groups, "Group A," is authorized to use fumigants in the control of termites. Section 8505(b)2 of the act provides as follows: "All fumigation work regulated by this chapter shall be performed under the direct and personal supervision of a person licensed under this chapter." Section 8651 of the act reads thus: "The performing, soliciting or inspecting of structural pest control work in other branches of pest control than those for which the operator or field representative is licensed is a ground for disciplinary action."

 It is the essence of the act that the public be protected against persons who are unqualified to perform the required work. It would violate the letter of the act to offer to do and to contract to do that which he was legally unqualified to do. It is the element of subcontracting that the original contractor assume the primary responsibility, thereafter delegating that responsibility to a further contractor who is secondarily responsible. The pest control operator cannot dele-

gate to another that which he is unqualified to do. For the foregoing reason it is unlawful for a pest control operator to contract to perform any fumigation work which he is not legally authorized to do, and he cannot escape the effect of the statute by subcontracting the work to a duly licensed operator.

A fumigator is defined to mean any person licensed by the pest control board as a structural pest control operator or as a structural pest control field representative who shall have been qualified by the board in the group or groups of pest control which include fumigation as set forth in section 8560, Business and Professions Code.

 In the present case petitioners were not fumigators within the foregoing definition since they were not licensed under section 8560 in a group which included fumigation. Therefore when they solicited fumigation work as a means of exterminating termites they violated section 8651 and were subject to disciplinary action.

 There is no merit in petitioners' contention that because fumigating with poisonous gases is expressly excluded from "Group E" (Bus. & Prof. Code, § 8560), it must by implication be included in "Group D." In "Group E" the license extends to the practice relating to the control of rodents and insects with the use of insecticides and allied chemicals, "Excluding, however, termites and other wood-destroying insects and fungi and fumigation with poisonous gases." It is obvious in reading the entire section that the Legislature did not intend the term "insecticides and allied chemicals" to be construed to be broad enough to include fumigation with poisonous gases. "Group A" is identical with "Group B" excepting that "Group A" includes fumigation. It is clear that wherever the Legislature intended to include fumigation it was expressly included.

 Neither is there any merit in petitioners' contention that the work was in fact done "under the direction and personal supervision of a person licensed" to do such work. The purpose of such requirement in section 8505, subsection (b) was to prevent a licensee from contracting for fumigation work and then permitting unlicensed and irresponsible persons to be in charge of and actually do the work. Because in the case at bar this portion of section 8505, subsection (b) of the Business and Professions Code was complied with does not relieve petitioners from responsibility for violating another section of the code, which they did, to wit, the soliciting of

structural pest control work in other branches of pest control than those for which they were licensed. (Bus. & Prof. Code, § 8651.)

In view of our conclusions it is unnecessary to consider other arguments presented by counsel.

Affirmed.

Moore, P. J., and Wilson, J., concurred.